**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIAN LAVERNE WHITNEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security[1]<br><br>　　　　　Defendant. | **Case No. 1:16-cv-00030-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

### I. INTRODUCTION

Plaintiff Marian Whitney seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[2]

### II. BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was 58 years old at the time of her hearing before the Social Security

---

[1] Consistent with Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the new acting Commissioner of Social Security, is substituted in place of Carolyn W. Colvin.
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 6, 7.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Administration. AR 43. She completed formal education through the ninth grade. AR 43. Plaintiff most recently worked as a bus driver in 2010. AR 84. Before that she worked as a truck driver. AR 84. Plaintiff currently has a driver's license, although her license to drive commercially is no longer active. AR 43, 64-65. Plaintiff lives alone. AR 49. She is capable of dressing, bathing, driving, preparing her own meals, doing laundry, shopping, performing housework, and gardening. AR 49, 356.

Plaintiff's alleged conditions are: osteoporosis, post-traumatic stress disorder, and depression. AR 255. On November 7, 2012, Plaintiff filed an application for disability insurance benefits under Title II. AR 217-223. Plaintiff also filed an application for SSI under Title XVI on December 20, 2012. AR 224-232. Both applications alleged a disability beginning on July 16, 2010. AR 217-232. The applications were denied initially on April 9, 2013 and on reconsideration on September 25, 2013. AR 136-141, 151-156. Plaintiff filed a request for a hearing on November 22, 2013. AR 157-162. The hearing was then conducted before Administrative Law Judge John Cusker (the "ALJ") on April 8, 2015. AR 38-71. On May 15, 2015, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 19-37. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied the appeal, rendering the ALJ's order the final decision of the Commissioner. AR 1-7.

Plaintiff now challenges that decision, arguing that the ALJ inappropriately deviated from the Dictionary of Occupational Titles ("DOT") in examining the work that Plaintiff was capable of performing.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 16, 2010, the date specified in her applications. AR 24. The ALJ found that Plaintiff had the following severe impairments: osteoporosis, major depressive disorder, posttraumatic stress disorder, and pain disorder. AR 24. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to:

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

"perform a range of work at the medium exertional level as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, she can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday (with normal breaks), and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. The claimant can frequently push and pull with her left lower extremity. She can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds. The claimant can understand and remember simple and complex tasks, but is limited to carrying out simple 1 to 2 and some detailed 2 to 3 step tasks through a regular workday and/or 40-hour workweek, with customary breaks. In addition, she can interact appropriately with the public, peers and supervisors." AR 26.

The ALJ determined that Plaintiff was capable of performing her past relevant work as a bus driver as she performed it. AR31. Thus, the ALJ's analysis ended at step four and the ALJ did not need to consider whether the Plaintiff was capable of performing work that existed in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). Because Plaintiff was capable of performing her past relevant work, the ALJ determined that she was not disabled. AR 32.

**IV.    STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**V.    DISCUSSION**

The Social Security Act provides that a claimant is disabled if she has impairments of

such severity that she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). At step four of the five step process, the ALJ must determine whether the claimant is capable of doing her "previous work." 20 C.F.R. §§ 404.1520(e), 416.920(e). "To make this determination, the SSA 'will compare [its] assessment of your residual functional capacity with the physical and mental demands of your past relevant work." *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010), *quoting* 20 C.F.R. § 404.1520(a)(4)(iv). "Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment." *Id.*, *citing* 42 U.S.C. 423(d)(2)(A).

To determine what the "physical and mental demands" of a claimant's past relevant work are, the ALJ may "consider the testimony of claimant as well as supplemental sources of information, such as the United States Department of Labor's *Dictionary of Occupational Titles (DOT)*." *Schroeter v. Sullivan*, 977 F.2d 391, 394 (7th Cir. 1992), *citing Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.*, SSR 82-62 (S.S.A. 1982). In some instances, the ALJ may seek the testimony of a vocational expert.

Plaintiff contends that the vocational expert in her case testified inconsistently with the DOT because the expert stated that Plaintiff could perform her past relevant work as actually performed. Specifically, Plaintiff claims that the ALJ erred because he determined that Plaintiff could perform her previous work as a bus driver, despite the fact that the DOT requires an individual to have a reasoning level of three to perform work as a bus driver.[6] Plaintiff argues that she is not capable of a reasoning level of three because her RFC only allows her to perform "simple 1 to 2 and some detailed 2 to 3 step tasks." Such a limitation, she contends, means that she can only achieve reasoning level two, rather than three. Thus, Plaintiff reasons, the ALJ was

---

[6] Level 3 reasoning includes the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." 913.463-010 BUS DRIVER, DICOT 913.463-010. Level 2 reasoning, in contrast, requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." 344.667-010 TICKET TAKER, DICOT 344.667-010.

required to explain why he deviated from the DOT when deciding that Plaintiff could perform work as a bus driver. Plaintiff also argues that she can no longer return to work as a bus driver because her commercial license is no longer active.

Defendant contends that Plaintiff has an unnecessarily restrictive understanding of the DOT's reasoning levels and that a reasoning level of three is entirely consistent with Plaintiff's RFC. Moreover, Defendant argues, the ALJ reviewed the requirements of Plaintiff's past relevant work as it was *actually* performed, rather than as it is *generally* performed. In other words, Defendant suggests that the ALJ need not even have relied on the DOT to decide whether Plaintiff could work as a bus driver because her actual responsibilities were more limited than the general responsibilities provided by the DOT. Defendant also notes that the question of past relevant work occurs at step four, when the burden of establishing disability is still on the claimant. Thus, the ALJ can find a claimant not disabled at step four if the claimant can perform her past relevant work as it is actually performed *or* as it is generally performed in the DOT.[7] Defendant cites four unpublished decisions issued by the Ninth Circuit Court of Appeals in support of this proposition.

**A. Deviations from the DOT**

The Ninth Circuit Court of Appeals has, in fact, previously found that at step four, the ALJ need only determine whether a claimant can perform her past relevant work as it was actually performed *or* as it was generally performed:

> Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82–62. *See* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:
>
> 1. The actual functional demands and job duties of a particular past relevant job; or
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.
>
> SSR 82–61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82–62.

---

[7] Conversely stated, a claimant must show that she is unable to perform her past relevant work as it was actually performed *and* as it is generally performed according to the DOT if the claimant's claim is to survive beyond step four.

6

> Pinto argues that the ALJ committed reversible error when he indicated in his questioning of the vocational expert that he was basing his decision only on whether Pinto could perform her past relevant work "as generally performed" without making a finding about her past relevant work as actually performed. ***We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations above.*** See Villa v. Heckler, 797 F.2d 794, 798 (1986) ("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job.")

*Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001) (emphasis added).

In other words, if an ALJ finds that a claimant is capable of performing her past relevant work as it was actually performed by the claimant, the ALJ does not also need to find that the claimant can perform her past relevant work as it is generally performed. *Wolcott v. Colvin*, Case No. 2:15-cv-1796-CKD, 2016 WL 3549603, at *5 (E.D. Cal. June 30, 2016) ("While an ALJ at step four may determine that the claimant can perform his or her past work as it is generally performed within the national economy—which is similar to step five's requirement that the ALJ find the claimant can perform other work that exists in significant numbers in the national economy—the ALJ may alternatively find the claimant not disabled on the basis that he or she could perform his or her past work as it was actually performed."), *citing* 20 C.F.R. § 416.960(b)(2). "When determining that a claimant can perform his or her prior work as it was actually performed, an ALJ is not required to consult the DOT because that source addresses an occupation as it is generally performed, not as it is specifically performed by the claimant." *Id.* at *6.

In this case, the ALJ found, based on the testimony of a vocational expert, that Plaintiff could perform her past relevant work as it was actually performed. AR 31 ("I find that the claimant is capable of performing her past relevant work as a bus driver, as she actually performed it."); AR 62 ("So the bus driver, as she performed it, I believe could be performed."). He was thus not required to examine the DOT to decide whether Plaintiff was capable of performing her past relevant work as it was generally performed. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). Consequently, any deviation from the prescribed requirements in the DOT was not error.

///

### B. Plaintiff's Driver's License

Plaintiff also argues that she cannot perform her past relevant work because she no longer has an active commercial driver's license. To make this assertion, Plaintiff argues that her lack of an active license is akin to an inability to pass a drug test because of prescription medication, which case law has historically viewed as a restriction that is closely tied to claimants' physical and mental impairments. Because the medication restriction is a direct result of those impairments, courts have been reluctant to disregard the restriction when considering a claimants' ability to perform past relevant work. *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010) ("In these circumstances, when the alleged requirement is mandatory and closely related to the physical and mental demands of the job as employers understand them, and Berry's inability to meet it is a direct physical result of prescribed medical treatment for an acknowledged impairment, the alleged requirement cannot be disregarded as a mere hiring preference.").

But Plaintiff's failure to maintain an active commercial license is less an inability to meet the physical and mental requirements of the bus driver position and more a simple failure to maintain her skills and credentials. The Court finds an analogous situation in *Ray v. Brown*, 813 F.2d 914 (9th Cir. 1987), in which a former CPA asserted that he could not return to his past relevant work because "while he is still a licensed CPA in Oregon, his license is endorsed 'Not Licensed for Public Practice.'" *Id.* at 916. The claimant also asserted that his skills were outdated, but acknowledged that he could take steps to reactivate his license. The court, interpreting the statutory and regulatory language of the Social Security Act, held that "atrophy of skills does not prevent one from performing past work for disability purposes." *Id.* at 917, *citing Wallschlaeger v. Schweiker*, 705 F.2d 191, 196 (7th Cir. 1983) ("the disability regulations state that inability to perform past relevant work due to 'technological changes in the industry' is not a basis for a finding that a claimant is disabled."). Thus, the court concluded, the ALJ did not err in finding that the claimant was not disabled because he could return to work as a CPA, even if his current license was not valid.

Plaintiff's problems with licensure are similar. The issue is not that any of her conditions preclude her from ever obtaining a license; it is merely that she no longer has or maintains an

active license. Plaintiff claims that her license was "disqualified" because she "was making a lot of mistakes and crying all the time." AR 65. But the "disqualification" does not appear to be a direct result of Plaintiff's impairments—the certification by her physician to the Department of Motor Vehicles indicates that Plaintiff is receiving "adequate followup" and that her condition is "control[ed] with minimal medication." AR 558. Her physician also checked a box that indicates that Plaintiff "meets standards" under the Motor Carrier Safety Regulations, with only yearly evaluations needed. AR 558. Plaintiff also previously noted in her visits with physicians that she is taking steps to "obtain her license" (AR 387) and said that the only reason she was unable to find a job, despite "pass[ing] DOT," was that she could not lift heavy weights. AR 380. It is thus clear that, like the claimant in *Ray*, Plaintiff can take (apparently has taken) affirmative steps to reactivate her license, even with her alleged impairments. Substantial evidence in the record supports the ALJ's conclusion that Plaintiff is able to return to her past relevant work as a bus driver.

## VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record or free of clear legal error.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Commissioner of Social Security and against Plaintiff Marian Laverne Whitney.

IT IS SO ORDERED.

   Dated:  **February 24, 2017**              /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE